This is our second case in the morning, 14-0260 in re. James H. For the appellant, Ms. Tracy, for the athlete, Mr. Lonergan, you may proceed. May it please the court. I'm Cynthia Tracy. I'm an attorney with the Guardianship and Advocacy Commission, and I was appointed in this case to represent the respondent, James H., in this mental health appeal, which arose from a commitment order that was entered in Sangamon County at the end of March of this year. He considers this case significant for his life, as all mental health cases are, and he respectfully asked the court to address the two issues he's raised in this case, because even though by statute this is a short order, and of course it's now expired, for him, since he's been found to have a mental illness, he submits that this very situation could This case could very well be considered, because as you can see from the record in the comprehensive report that was filed as Section 3.8.10 requires, there's always a reference to past history, and as a practical matter, in the course of most hearings at the trial court level, past adjudications of mental illness, or even past hospitalizations, come up in the course of the hearing. He's never had a commitment that we know of based on this record. He may have had one past hospitalization that's referenced. He's never been convicted of a felony, although this case did begin with him approaching the Watsika police, but in fact he wasn't charged with even a misdemeanor or any offense, so his case should be heard on that basis as well. Now I wouldn't mean to suggest that I have any issues with paranoia, but I would believe that once the Secret Service became interested in your client, that the issue of collateral consequences is gone, because the collateral consequences have attached, and he will be on the radar, and that part of his psychiatric history is going to be with him for the rest of his life, and it is unlikely that no matter how innocent he appears, or how his behavior is modified, that consequence, plus an earlier hospitalization, whether it was voluntary or involuntary, we don't know from the record, plus this proceeding, even if this proceeding were reversed, as a practical matter, isn't that a collateral consequence that's probably even more significant than an adjudication? For him personally? Or for any citizen. I think it could be. I appreciate your candor. I think it's a sad fact for most mental health respondents that regardless of the court rulings, that a diagnosis does follow them. But I'm not just speaking about the diagnosis, I'm speaking about the extra, I mean if he did reference the governor, it would be different, I suppose, because nobody tracks what people think about the governor. I've had cases where clients did that as well, and it's, I don't know. He found himself at the police, I mean he sought them out, the way I read the record, and they never charged him. So I don't think he was an imminent danger to anyone, nor in the course of the hearing was he presented as such. But that's not really before the court. So he's simply asking the court to consider the issues he raises, and he submits, despite the reality that you've pointed out, Justice, that all three exceptions could apply. Even if you would find that only one applies, that would be sufficient for you to address the issues. And really the issues he raises are very straightforward. The first is just a pleading issue dealing with Section 3-601, and part of this issue is my personal bias as well as the way I think the legislature intended Article 6 to be read, that if you're going to, in this case, take someone to a mental health facility to force them to go through the emergency commitment process, then I think the legislature wrote these provisions of Article 6 so they would be followed. I think cases have repeatedly said strict compliance is mandated, and I don't think it takes a rocket scientist to fill out these pleadings. I think if I were an assistant state's attorney, I would fill that one in, and I have the same bias that you have, frankly, or not frankly, you do. But here, the assistant state's attorney or someone filling it out could have said, no efforts have been made because the respondent knows nothing of his mother other than she may live in Costa Rica, and there is an unidentified sister with no address to whom he no longer has any contact. We are totally unaware of any other resources, and we do not have either the time or the resources, because nobody is giving us any resources, and we don't know what we're supposed to do beyond, I mean, I'd go on and editorialize, and I think I'd add that to my response, maybe to get somebody's attention. But as a practical matter, what is it that counties can do in situations like this? I think it takes, we were just talking before we started this, I think it's just very simple. When I do these cases and providers I deal with, I've worked with them to just have a checklist of, you know, is everything in order before it's even filed? I think it's that simple. In terms of the information, because the information that would be filled in where this is blank is, the only thing it would show is an awareness that there isn't anything they can do. Well, or even if they said, they asked, I mean, what you offered was perfect, but even I've had pleadings where they just asked the respondent, respondent offers no information, just anything that they would write. And in this case, they knew that there could have been, I mean, there was a mother and there was a sister that if he chose not to speak with her, then he certainly knew her name or they could have just said there's a mother and a sister unidentified or anything. I mean, the point is they just could have taken the time to just do that. I think the cases are clear. I think the cases where there's been some indication that there was someone that the blank was required to be filled in. And I just don't see any excuse in this case. I take it though that you're not, I'm not asking you to concede the issue, but I'm, as a practical matter, if we tell the circuit court and the petitioners, you got to fill this in. In this case, what they would have filled in would have simply complied with filling in the blanks, but it wouldn't have really changed anything. No, and that's okay. Because we need an awareness of their responsibility to either ask or at least fill in what information they have. I think the statute, clearly there's a separate provision for the petition and it clearly says it should be filled in and I don't know. I just think for a case like this to go forward, especially when you're taking away, I mean, I know when you talk about taking away someone's liberty it just sounds like a lofty constitutional concept, but if you ever visit anyone that's stuck in a facility, even for 90 days, or you ever just go in there to visit someone when you're going to leave, you understand that for some people it's traumatic. And it's a very, I think it's very significant. And I know we're balancing the state's interest against theirs, but I just think it still comes down to where I started, that if you're going to put someone through these proceedings, then just put the pleadings in order and follow the statute so the case proceeds properly. And that's really all he was asking for in this case. And then the last part is, especially in this day and age, I don't even know what the number is right now for filings just from in this county this year. I know it exceeds 800. I have a whole stack of them sitting on my desk and I don't even know what the numbers are, but at any rate, in this day and age, especially in this county where we have one facility, one state facility that deals with everything from I guess Rockford on down to the Southern Illinois facilities would pick up, that again, the statute clearly requires that a person, if they're going to be committed, must be placed in the least restrictive facility. Okay, now what does it take when they have a whole staff? I mean, you look at the reports that in this case McFarland filed, 20, what, 10 or 15 pages just for the report. You would think they could do more than just check the box on the front page that says there are no less restrictive alternatives. They always, or they're supposed to, consider anything that's less restrictive. But in his case, he couldn't have been placed with a relative, so that wouldn't have counted. But there's a whole, especially in this county, a spectrum of outpatient services that are available to people or could become available to people with some funding manipulation. But at any rate, just to even say that different options could be available, and that's not saying they have to be considered appropriate for everyone, but why aren't they appropriate? It should be more than what happened in this case. Doctor, do you recommend hospitalization? Yes. Is there a treatment plan filed? Yes. Is it the least restrictive alternative? Yes. Should he stay there for 90 days? Yes. And that's the extent of it. I think that the cases and just out of deference to the rights of the respondent, I think just doing that is wrong. I think clearly hospitalization should be the last choice, not the only and the first choice for people. And so what he's asking for in this case is just for this court to consider that he was wrong by what occurred in this case. And so on those three bases, he's asking the court to consider his issues and to reverse his commitment. Thank you. Mr. Lonergan? Good morning, Your Honor. Please support counsel. The state's position in this matter is, quite frankly, that this particular case and those like it are a waste of this court's resources and should not be entertained by this court and dismissed as moot. The state is aware that this type of case is a potentially very serious case and that you are removing someone's liberty. Certain governments or societies in the history of our planet have used the use of this case of mental health as a guise to incarcerate individuals who are either public enemies or irritants to the power in charge. And so we must safeguard this procedure and ensure that it is not abused and that people that are incarcerated or held against their will in these institutions for a period of time are done so for the reasons stated in the act. However, that's not really the problem that's before this court this morning. The problem we have with this case is society's problems with mental health individuals, people who are suffering from mental health, who are not properly cared for and that are left basically to fend for themselves on our streets. And how is our society going to appropriately care for these people and how can we economically and appropriately safeguard their interests? What we have in this instance is an individual living on the streets. He's clearly suffering from a mental illness. He's a threat to himself or others. He meets the criteria for involuntary commitment. Were there mistakes in the procedure used to place him in that facility? Yes. Strict adherence to the statute was not adhered to by those who were charged with the responsibility for checking the boxes. But I suggest to you that's the only thing that would have happened. They would have checked the box saying, yes, I diligently inquired and I was unable to come up with any information. I mean, even the respondent himself is unable to suggest what could have possibly been done or what could have possibly changed. Well, if you've got a son at home and he doesn't rinse out a cereal bowl in the morning and put it in the dishwasher, it doesn't do any good and will never teach him to put that bowl away if you just keep doing it for him. And that's what this court does repeatedly. We do for the trial court mental health cases what they did not do for themselves by saying, well, we've considered it, but everybody was trying to do the right thing and this was just, you know, it's an error, but it didn't really affect anybody's rights. And we're not seeing any improvement. We're not seeing any change. And I think Ms. Tracy's point, and I think she was very candid, that there isn't any information here, but filling in that, leaving it blank is an insult to the process and also tends to show a lack of awareness that this is a pleading that's being filed, equivalent of a pleading, and it ought to be filled out. And filling out properly is not that much extra effort no matter how overburdened the staff might otherwise be with paperwork. It's, and I think Justice Steigman wrote a, I don't remember if it was his majority opinion or a concurrence, special concurrence regarding, using the same kind of checklist that you teach young prosecutors to use in traffic court and misdemeanors, there are certain things that have to be done and if you do those, the process then at least is clean. You may not always get the result you want, but at least the process will be there. Well, I share in the court's frustration and I understand the point the court is making. I'm not sure this instance is an example of that, however. Well, leaving it blank. I mean, it could have been oversight, it could have been ignorance, it could have been intentional. I don't know. But from my experience, there's always going to be mistakes of some kind, regardless of how diligent both parties are at adhering to whatever the guidelines or regulations or statutory requirements are. But you get to lead the witness, so is that the least restrictive alternative? Yes. Why not then ask why is that the least restrictive? Well, because he really couldn't function in a group home. There really isn't a community resource that would be suited for him. At least there's an awareness then that the physician, the psychiatrist testifying understands that you have to think about other alternatives, but unfortunately, very often in the cases that we see, hospitalization is something that's best for a while. But you wonder, is there a lack of awareness? It would be just as if you've got a trial judge that never, ever, ever considers probation, that thinks that incarceration should be automatic. On the other side of that coin, you've got a judge and two lawyers who are looking at an individual who is clearly in need of assistance. And they, because of whatever reasons, maybe they have 10 or 20 more of these hearings to go. I don't know what their specific motivation could be on that particular day. But I mean, they're thinking to themselves, we don't need to get into why alternatives are unavailable. It's plain for any reasonable individual to see this guy needs incarceration in a hospital setting. He's unemployed. He has no family. He's living on the street. He's a clear danger to himself or others. I mean, I wasn't there either. But I can imagine the set of circumstances in which all of us are looking at this guy and in 10 seconds size him up. And we don't need to go through the dog and pony show of checking every box. And I understand. There have been a lot of criminal defendants in trials where I looked at them and I thought, man, we really had to have the trial anyway. Ask the state to put on evidence and ask the defendant's attorney to put on a defense. I agree about sizing up. And I'm not trying to make excuses. I'm just trying to say, this is what's really going on. And when we look at it months later and we're only looking at a written record, it's easier for us to look at it and say, jeez, one more question here. Why didn't you just fill that in? Why didn't you give the explanation that Justice Nett suggested in questioning of the respondent? Yeah, that would all be easy. And it would be appropriate. And it would help us all understand why they did what they did. But reversing this, really, I don't even know if that sends the signal that the court wants to send. Because honestly, this guy is already out of the system. I don't even know if they care. I mean, I don't know if the judge or the two associate attorneys, I mean, if you wanted to hold them in civil contempt, maybe you'd get their attention. But absent that, I'm not suggesting that, but absent that, I don't know how you would really say, look, I'm really serious about this particular matter. On the other side, I have to think that I've tried my share of cases. And I doubt that I've ever tried a case where there wasn't some error of some kind in it. And I think it's fair to suggest to the respondent, he has counsel right there for him, that if they feel something is amiss, if they feel this man's rights are being trampled, if there's some concern whatsoever, raise it. Say something at that time. That's the time to say, hey, have they really looked for somebody else in the family? This guy's saying that he'd like his sister to be here. Or, hey, have you really considered alternative treatments? This gentleman looks like he might be able to function in some outpatient care facility. Those things weren't asked of the defense counsel either. And I think their absence suggests the recognition that the question was meaningless or would have not brought forth the type of answer that the respondent thought in his best interest. So those are the things that I would point to and say, I understand the court's frustration. I understand that the court is tired of dealing with these same issues. I'm sympathetic with the court. I don't think the court should be wasting its resources dealing with the same issues like this time and time again. I think the issue has been addressed. I think that the defendant is required now to raise it and to show some prejudice in this particular type of affair. And with regard to whether or not this is the least restrictive environment, there too. The respondent, I think, has an obligation to challenge that if they feel it should be challenged. The record need only contain some information which would support the court's order. And I think this record does contain that. I think the judge was clearly confident that this gentleman posed a danger not only to himself but to the court. He's threatening the court. He's constantly interrupting the court right in the middle of the court's explanation of his holding. You know, this is one of those cases that's just clear cut. I think everybody in the room knew it. And perhaps they rounded a few edges in their efforts to short circuit things because they all realized where it was going. Human nature being what it is, it's not appropriate in hindsight. But it's understandable. And I don't think it's the type of thing that this court needs to use its limited resources on. So I would encourage the court to dismiss it as moot. There's no further questions. Thank you. Thank you. Ms. Dresen? I would just say that this respondent felt wrong. He exercised his statutory right to appeal this case. And he's asking the court, this court, to then address the issues that he thinks are significant. I agree that most of these procedural matters should be dealt with in the trial court. I think that's the objective. I think that both sides should attempt to achieve that when cases are before the court. And I think that rendering a decision in this case could facilitate that objective. I recall Judge Steigman's concurrence, it might have been a dissent even, but I remember what you're talking about. And I know it was heard in Sangamon County. I know that when I argued a case here, he sent me on a mission to talk to people in Sangamon County about trying to cure these defects and to clean things up. And I did that.  And just from the Sangamon County new appeals come to my desk initially. And I can tell you, for the longest time, things were better here. And for whatever reason, I've noticed in the appeals, the new appeals that I've ended up doing, there's more procedural issues. But I guess I'm just saying that I think this case is before the court. And I think ruling on it could, again, send a message. And I think it could help the objective that we all have, which is not to look at the respondent in the courtroom. I totally understand what you're all saying about just looking at people. But we're not the docs. We're not the jury or anyone else. We're not the social worker that writes the treatment plan. We have a very limited role in these proceedings. And I think part of our role is to continue to strive for strict statutory compliance. And really, that's all he's asking for. Thank you. Thank you. We'll take the matter under advice.